# In the United States Court of Federal Claims

No. 10-401C

Filed: August 18, 2011

**TO BE PUBLISHED**

| | |
|---|---|
| ************************************* <br> \* <br> \* <br> \* <br> \* <br> DANIEL R. STRIPLIN, \* <br> \* <br> Plaintiff, \* <br> \* <br> v. \* <br> \* <br> THE UNITED STATES, \* <br> \* <br> Defendant. \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> ************************************* | Failure to State a Claim, RCFC 12(b)(6); <br> Fair Labor Standards Act, 29 U.S.C. §§ 201-19; <br> National Defense Authorization Act For Fiscal Year 2007, Pub. L. 109-364, § 1105, 120 Stat. 2083, 2409 (2006); <br> National Defense Authorization Act For Fiscal Year 2006, Pub. L. 109-163, § 1105, 119 Stat. 3136, 3450-51 (2006) <br> RESTATEMENT (THIRD) OF AGENCY § 1.01 (Definition of Agent); <br> Subject Matter Jurisdiction, RCFC 12(b)(1); <br> Tucker Act, ch. 359, 24 Stat. 505 (1887), 28 U.S.C. §§ 1491, 1494; <br> Government Employee Pay, 5 U.S.C. §§ 5341-56, 5755, 5925, 5929, 8118. |

**Michael Anthony Moroni**, Bloomfield, Missouri, Counsel for Plaintiff.

**Corinne A. Niosi**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND ORDER

**BRADEN,** *Judge.*

### I.   RELEVANT FACTS.[1]

In April 2007, Daniel R. Striplin ("Plaintiff") accepted a position as a Quality Assurance Specialist with the Research Development and Engineering Command of the Department of the Army ("Army") in Iraq. Am. Compl. Count I ¶ 3, Am. Compl. Ex. A; Gov't Appx. at 54.

---

[1] The relevant facts cited herein are derived from the April 30, 2011 First Amended Complaint ("Am. Compl."), and attached Exhibit ("Am. Compl. Ex. A"), and the Appendix of Exhibits attached to Government's May 17, 2011 Motion to Dismiss ("Gov't Appx. at 1-55").

1

Plaintiff performed "various management functions" in Iraq until May 9, 2008, when his deployment ended. Am. Compl. Count I ¶ 3-4, Count II ¶ 3-4.

## II. PROCEDURAL HISTORY.

On June 29, 2010, Plaintiff filed a Complaint ("Compl.") in the United States Court of Federal Claims alleging that the Army improperly calculated of his wages from April 2007 to May 2008, resulting in an underpayment of $86,781.80.[2] Compl. ¶ 5. On September 29, 2010, the Government filed a Motion To Dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").

On October 29, 2010, the Government filed an unopposed Motion To Stay for sixty days to investigate the issues raised in the June 29, 2010 Complaint. On November 1, 2010, the court granted the October 29, 2010 Motion To Stay. On December 30, 2010, the Government filed a second unopposed Motion To Stay for an additional thirty days. On January 3, 2011, the court granted the December 30, 2010 Motion. On February 3, 2011, the stay expired. On March 2, 2011, Plaintiff filed an unopposed Motion, requesting an enlargement of sixty days to file a Response to the Government's September 29, 2010 Motion To Dismiss. On March 3, 2011, the court granted the March 2, 2011 Motion.

On April 30, 2011, Plaintiff filed a Motion requesting leave to file a First Amended Complaint alleging that the United States Court of Federal Claims has jurisdiction under both 28 U.S.C. § 1491 and 28 U.S.C. § 1494. On May 2, 2011, the court granted Plaintiff's April 30, 2011 Motion to file a First Amended Complaint. On May 17, 2011, the Government filed a Motion To Dismiss ("Gov't Mot.") the April 30, 2011 Amended Complaint, pursuant to RCFC 12(b)(1) and RCFC 12(b)(6), together with an appendix of exhibits ("Gov't Appx. at 1-55"). On June 13, 2011, Plaintiff filed a Response ("Pl. Resp."). On June 30, 2011, the Government filed a Reply ("Gov't Rep.").

## III. DISCUSSION.

### A. Jurisdiction.

#### 1. Under 28 U.S.C. § 1491.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act, wherein Congress authorized the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. 1491(a)(1) (2006). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely

---

[2] Although, the June 29, 2010 Complaint alleges that Plaintiff is owed $86,781.80, this amount appears to be an error. The Exhibit attached to the June 29, 2010 Complaint reflects that the amount should be $89,781.80. *See* Am. Compl. Ex. A.

confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls on the plaintiff. *See FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

### 2. Under 28 U.S.C. § 1494.

Pursuant to 28 U.S.C § 1494,[3] the United States Court of Federal Claims has jurisdiction to determine amounts due "to or from the United States by reason of any unsettled account of any officer or agent of, or contractor with, the United States." 28 U.S.C. § 1494 (2006). This basis of jurisdiction originally was enacted as section three of the Tucker Act, ch. 359, 24 Stat. 505 (1887). *See Standard Dredging Co.* v. *United States*, 71 Ct. Cl. 218, 239 (1930) (explaining that section three of the Tucker Act was enacted "to provide for the speedy disposition of claims by the United States against its officers and agents, and against those having contracts with it, by giving to such persons the right to come into this court and compel the United States to answer and have its claim determined"). Prior to enactment of section three of the Tucker Act, claims of indebtedness to the United States could be adjudicated only in suits brought by the United States in the United States District Courts, resulting in prejudice to individuals forced to wait indefinitely to have their accounts settled. *Id.* at 239-40.

Pursuant to 28 U.S.C. § 1494, the United States Court of Federal Claims has jurisdiction to determine amounts due on "unsettled accounts of officers, agents, or contractors when (1) the plaintiff applied to the proper department of the Government for settlement of the account; (2) three years have elapsed from the date of such application without settlement[;] and (3) no suit

---

[3] In full, section 1494 provides:

> The United States Court of Federal Claims shall have jurisdiction to determine the amount, if any, due to or from the United States by reason of any unsettled account of any officer or agent of, or contractor with, the United States, or a guarantor, surety or personal representative of any such officer, agent or contractor, and to render judgment thereof, where—
>
> (1) claimant or the person he represents has applied to the proper department of the Government for settlement of the account;
> (2) three years have elapsed from the date of such application without settlement; and
> (3) no suit upon the same has been brought by the United States.

28 U.S.C. § 1494.

upon the same has been brought by the United States." *Watson* v. *United States*, 86 Fed. Cl. 399, 402 (2009) (internal quotations omitted).

### B.   Standing.

The Supreme Court of the United States has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975). Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp.* v. *Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the Government; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180-81 (2000) (citations omitted).

The April 30, 2011 First Amended Complaint alleges that Plaintiff has suffered an "injury in fact" that is concrete and particularized, traceable to the Army's failure compensate him fully for his Iraq service, and redressable by a favorable decision. Am. Compl. Count I ¶ 5; Am. Compl. Count II ¶ 5. Accordingly, Plaintiff has standing to bring the claims alleged in the April 30, 2011 First Amended Complaint.

### C.   Standard For Decision On A Motion to Dismiss Pursuant To RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nevertheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

### D.   Standard For Decision On A Motion To Dismiss Pursuant to RCFC 12(b)(6).

Although a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted)

(internal quotation marks omitted). In order to survive a motion to dismiss, however, the court does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, the court "must accept as true all the factual allegations in the complaint, and . . . indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co.* v. *United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted); *but see Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

### E.  The Government's May 17, 2011 Motion to Dismiss.

Count I of the April 30, 2011 First Amended Complaint alleges that the court has jurisdiction pursuant to 28 U.S.C. § 1494. Am. Compl. Count I ¶ 7. Count II alleges that the court has jurisdiction pursuant to 28 U.S.C. § 1491, together with 5 U.S.C. §§ 5341-56, 5755, 5925, 5928, 8118, and the Fair Labor Standards Act, 29 U.S.C. §§ 201-19. Am. Compl. Count II ¶ 7. In addition, Count II alleges that the Army authorized various pay adjustments but failed to pay the full amount as a result of "incorrect withholdings and incorrect payments" due to computer errors, debts owed to the Government, and the unlawful application of a pay limitation. Am. Compl. Count II ¶ 5 & Ex. A.

#### 1.  Whether The Court Has Jurisdiction Over The April 30, 2011 First Amended Complaint, Pursuant To 28 U.S.C. § 1494.

##### a.  The Government's Argument.

The Government argues that the April 30, 2011 First Amended Complaint failed to plead sufficient facts to establish the jurisdictional requirements of 28 U.S.C. § 1494. Gov't Mot. at 7. First, section 1494 applies only to officers, agents, or contractors of the United States. Gov't Mot. at 7. The April 30, 2011 First Amended Complaint, however, alleges that Plaintiff was a civilian employee of the Army, not an officer, agent, or contractor. Gov't Mot. at 7-8. Second, the April 30, 2011 First Amended Complaint does not allege that Plaintiff applied to the "proper department of the Government" for settlement of his account. Gov't Mot. at 8 (quoting 28 U.S.C. § 1494(1)). Third, the April 30, 2011 First Amended Complaint does not allege that three years have elapsed since the date of Plaintiff's application to the "proper department of the Government" for settlement of his account. *Id*. Instead, the April 30, 2011 First Amended Complaint alleges that more than three years have elapsed since the errors in Plaintiff's wages occurred. Am. Compl. Count I ¶ 8.

##### b.  The Plaintiff's Argument.

Plaintiff responds that, under basic principles of agency, civilian supervisory employees of the Army qualify as agents of the United States. Pl. Resp. at 2. Second, the April 30, 2011 First Amended Complaint alleged sufficient facts to "put the defendant on notice of his claim and to further fulfill the requirement of the statute for a cause of action." *Id*. In addition, the

April 30, 2011 First Amended Complaint properly alleged that Plaintiff "demanded that the errors in his payroll account be rectified," and more than three years have passed since he first sought to have this dispute resolved. *Id.*

### c. The Court's Resolution.

The first question the court must address is whether a civilian employee of the Army is an "agent" as the term is used in 28 U.S.C. § 1494. "Where Congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *NLRB* v. *Amax Coal Co.*, 453 U.S. 322, 329 (1981). The United States Court of Appeals for the Federal Circuit has held that the term 'agent' is such a term, and should be construed in light of its well-settled common law meaning unless the "language, context, or background" of the statue suggests a "different construction." *O'Neill* v. *Dep't of Hous. & Urban Dev.*, 220 F.3d 1354, 1360 (Fed. Cir. 2000).

The Restatement (Third) of Agency ("Restatement") defines 'agency' as

> the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.

RESTATEMENT § 1.01 (2006).

The Restatement explains that these elements of common-law agency "are present in the relationships between *employer and employee*, corporation and officer, client and lawyer, and partnership and general partner." RESTATEMENT § 1.01 cmt. c. (emphasis added); *see also id.* ("The common law of agency . . . additionally encompasses the employment relation, even as to employees whom an employer has not designated to contract on its behalf or otherwise to interact with parties external to the employer's organization."). There is nothing in 28 U.S.C. § 1494 that suggests a different construction is required. The April 30, 2011 First Amended Complaint alleges, and the Government does not dispute, that Plaintiff was a civilian employee of the Army. Am. Compl. Count I ¶ 2. Therefore, the court has determined that Plaintiff is an agent of the United States by virtue of his position as a federal employee.

The April 30, 2011 First Amended Complaint, however, does not establish the second or third jurisdictional requirements of 28 U.S.C. § 1494. Specifically, the April 30, 2011 Amended Complaint does not allege that Plaintiff applied to the "proper department of the Government" for settlement of his account. Instead, the April 30, 2011 First Amended Complaint alleges only that "demands have been made for . . . payment . . . and that they have been denied." Am. Compl. Count I ¶ 6. Nor does the April 30, 2011 First Amended Complaint allege that more than three years have passed since Plaintiff requested a settlement of his account. Am. Compl. Count I ¶ 8. Instead, the April 30, 2011 First Amended Complaint alleges only that "more than three years have elapsed since *the first errors* were made." *Id*. (emphasis added).

Therefore, the court has determined that the April 30, 2011 First Amended Complaint fails to allege sufficient facts to establish jurisdiction, pursuant to 28 U.S.C. § 1494. *See* RCFC 12(b)(1).

### 2. Whether The Court Has Jurisdiction Over The April 30, 2011 First Amended Complaint, Pursuant To 28 U.S.C. § 1491.

#### a. Government's Argument.

To the extent that Plaintiff relies upon 5 U.S.C. § 5925 (post differential pay)[4] and 5 U.S.C. § 5928 (danger pay)[5] to establish jurisdiction under 28 U.S.C. § 1491, the Government argues that these statutes are discretionary and therefore not money-mandating.[6] Gov't Mot. at 9-10. The Government also argues that the regulations implementing these statutes, which are set forth in the Department of State Standardized Regulations ("DSSR"), are discretionary.[7] *See* DSSR § 13 ("When authorized by law, the head of an agency *may* . . . grant post differential . . . [and] danger pay allowance . . . to an employee of his/her agency . . . subject to the provisions of these regulations and the availability of funds." (emphasis added)). Moreover, the Department of Defense ("DoD") Civilian Personnel Manual provides that DoD civilian employees shall not automatically be granted overseas allowances and differentials "simply because they meet eligibility requirements." DoD 1400.25-M, SC1250.4.3.

#### b. Plaintiff's Response.

Plaintiff responds that 5 U.S.C. §§ 5925, 5928, and 5755 are money-mandating because the Government agreed to pay Plaintiff the full amount of required wages specified in the

---

[4] Section 5925(a) states: "A post differential *may be granted* on the basis of conditions of environment which differ substantially from conditions of environment in the continental United States and warrant additional pay as a recruitment and retention incentive." 5 U.S.C. § 5925(a) (2006) (emphasis added).

[5] Section 5928(a) states: "An employee in a foreign area *may be granted* a danger pay allowance on the basis of civil insurrection, civil war, terrorism, or wartime conditions which threaten physical harm or imminent danger to the health or well-being of the employee." 5 U.S.C. § 5928(a) (2006) (emphasis added).

[6] Likewise, the Government argues that 5 U.S.C. § 5755 (supervisor pay differential) and accompanying regulations are discretionary and not money-mandating. Gov't Mot. at 13-14; *see also* DoD Financial Management Regulation ("DoDFMR") § 030501; DoD 1400.25-M, SC575.4.3.2.1 ("A supervisory differential *may* be paid to a General Schedule employee who supervises one or more civilian employees not covered by the General Schedule if one or more of these subordinate civilian employees would, in the absence of such a differential, be paid more than the supervisory employee." (emphasis added)).

[7] Under the DoDFMR, "allowances and differentials payable to employees officially stationed in foreign areas are established by the Secretary of State and published in the [DSSR]." DoDFMR § 030401.

statutes but did not do so. Pl. Resp. at 3. Therefore, the court should find that it has jurisdiction for the same reasons set forth in *Adde* v. *United States*, 81 Fed. Cl. 415, 419 (2008) (holding that Plaintiff stated a money-mandating claim for post allowance under 5 U.S.C. § 5924 and section 220 of the DSSR). Pl. Resp. at 3.

### c. The Court's Resolution.

As a civilian employee serving by appointment, Plaintiff may not proceed under a theory of breach of contract, but instead must establish jurisdiction under the relevant statutes and regulations that govern such employment. *See Hamlet* v. *United States*, 63 F.3d 1097, 1101 (Fed. Cir. 1995) (It is a "well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government. . . . [I]f [Plaintiff's] employment was by 'appointment,' a breach of contract action against the government would be precluded." (citations omitted) (internal quotation marks omitted)).

On their face, 5 U.S.C. §§ 5925 and 5928 are not money-mandating, because they vest discretion in the Government to authorize an increase in pay, instead of mandating such increases. *See Doe* v. *United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006) ("A statute is not money-mandating when it gives the government complete discretion over the decision whether or not to pay an individual or group."); *see also id.* ("There is a [rebuttable] presumption that the use of the word 'may' in a statute creates discretion.").

The United States Court of Federal Claims, however, has held that similar pay statutes, although not money-mandating, require payment once the employee has fulfilled the conditions set forth in the DSSR that "make the allowance applicable to his or her employment overseas." *See Adde* v. *United States*, 81 Fed. Cl. 415, 419 (2008) (holding that Plaintiff stated a money-mandating claim for post allowance under 5 U.S.C. § 5924(1) and section 220 of the DSSR); *see also Doe*, 463 F.3d 1314, 1324 (holding that a statute is money-mandating because once "the head of an agency states that a position meets the criteria listed . . . , the statute requires payment to employees with that position").

In this case, the DSSR contains guidance about post differential pay under 5 U.S.C. § 5925 and danger pay under 5 U.S.C. § 5928, providing detailed requirements for receiving these forms of additional pay. *See* DSSR chs. 500, 650. Plaintiff, however, is a civilian employee of the Department of Defense and is subject to the DoD Civilian Personnel Manual.[8] Gov't Appx. at 22. The DoD Civilian Personnel Manual explains that for DoD civilian employees

---

[8] Since the Plaintiff in *Adde* was an employee of the National Institutes of Health, the DoD Manual was inapplicable in that case. *See Adde*, 81 Fed. Cl. at 416.

> Overseas allowances and differentials (except the post allowance[9]) are not automatic salary supplements, nor are they entitlements. . . . Individuals shall not automatically be granted these benefits simply because they meet eligibility requirements.

DoD 1400.25-M, SC1250.4.3.

Therefore, the court has determined that the DoD Civilian Personnel Manual specifies that post differential and danger pay for civilian employees of the DoD are discretionary and therefore not money-mandating.

This, however, does not dispose of what appears to be the gravamen of the April 30, 2011 First Amended Complaint: that the Army authorized pay adjustments but failed to pay the full amount as a result of "incorrect withholdings and incorrect payments." Am. Compl. Count II ¶ 5. Specifically, the April 30, 2011 First Amended Complaint and attached exhibits indicate that the Army did not pay the full amount due to Plaintiff because the Army incorrectly applied a $186,600.00 pay limitation, despite the fact that the pay limitation was raised to $212,100.00 by the National Defense Authorization Act For Fiscal Year 2007, Pub. L. 109-364, § 1105, 120 Stat. 2083, 2409 (2006),[10] a March 5, 2007 DoD Memorandum, and OPM CMP-2006-11. Am. Compl. Ex. A ¶ 7.  In addition, Plaintiff asserts that he was  underpaid due to computer errors

---

[9] The April 30, 2011 First Amended Complaint does not allege that Plaintiff was entitled to post allowance pay, which is governed by 5 U.S.C. § 5924(1) and section 220 of the DSSR. *See* Compl. Count II ¶ 7.

[10] The National Defense Authorization Act For Fiscal Year 2007 provides:

(a) WAIVER AUTHORITY.--During 2006 and 2007 and notwithstanding section 5547 of title 5, United States Code, the head of an executive agency may waive, subject to subsection (b), the limitation established in that section for total compensation (including limitations on the aggregate of basic pay and premium pay payable in a calendar year) of an employee who performs work while in an overseas location that is in the area of responsibility of the commander of the United States Central Command, in direct support of or directly related to a military operation (including a contingency operation as defined in section 101(13) of title 10, United States Code).

(b)  MAXIMUM TOTAL COMPENSATION.--The total compensation of an employee whose pay is covered by a waiver under subsection (a) may not exceed $200,000 in 2006 and $212,100 in 2007.

Pub. L. 109-364, § 1105, 120 Stat. at 2409; Pub. L. 109-163, § 1105, 119 Stat. 3136, 3450-51 (2006).

9

and inappropriate withholdings, although the April 30, 2011 First Amended Complaint does not clearly explain the nature of these deficiencies. Am. Compl. Count II ¶ 5 & Ex. A ¶ 5.

To the extent that the April 30, 2011 First Amended Complaint alleges that Plaintiff's pay limitation should have been raised from $186,000 to $212,100, a money-mandating source of law has been identified. The National Defense Authorization Act For Fiscal Year 2007 provides the authority to waive the pay limitation up to $212,100 in 2007, and $200,000 in 2006, for employees "who [perform] work while in an overseas location that is in the area of responsibility of the commander of the United States Central Command, in direct support of or directly related to a military operation." *See* Pub. L. 109-364, § 1105, 120 Stat. at 2409; *see also* National Defense Authorization Act For Fiscal Year 2006, Pub. L. 109-163, § 1105, 119 Stat. 3136, 3450-51 (2006). Although the statute is discretionary, the DoD exercised its discretion in the March 5, 2007 DoD Memorandum, signed by the Deputy Secretary of Defense. The March 5, 2007 DoD Memorandum provides detailed criteria to determine whether an employee is eligible for the increased pay limitation.[11] March 5, 2007 DoD Memorandum at 2. Although authority to determine when employees meet the "eligibility criteria" is delegated to Secretaries of the Military Departments and the Heads of Defense Agencies and DoD Field Activities and may be further delegated, there is no indication that these officials can deny this increase in pay if the "eligibility criteria" are met. *Id.* at 2-3. Of course, whether Plaintiff meets these criteria is a question not of jurisdiction, but instead goes to the merits of this case. *See Fisher* v. *United States*, 402 F.3d 1167, 1173 ("[W]hether the facts of the case support a remedy, of course remains as a separate [non-jurisdictional] question.").

For these reasons, the court has determined that the April 30, 2011 First Amended Complaint has established Tucker Act jurisdiction to adjudicate claims alleged in Count II of the April 30, 2011 First Amended Complaint. To the extent that the April 30, 2011 First Amended Complaint may be read to allege that the Government improperly withheld payments due to computer errors or offset debts Plaintiff owed to the Government, the April 30, 2011 First Amended Complaint does not provide sufficient detail to determine whether the court has jurisdiction over these claims pursuant to 28 U.S.C. § 1491, as discussed below.

### 3. Whether The April 30, 2011 First Amended Complaint States A Claim Upon Which Relief Can Be Granted.

---

[11] Specifically, the increased limitation applies employees who:

a. Are subject to the provisions of 5 U.S.C. [§] 5547 or Subchapter 1930.12 of DoD 1400.25-M, Department of Defense Civilian Personnel Manual (CPM);
b. Are assigned to an overseas location in the CENTCOM area of responsibility;
c. Remain in the US CENTCOM area of responsibility for at least 42 consecutive calendar days; and
d. Perform work in direct support of, or directly related to, a military operation, including a contingency operation as defined in 10 U.S.C. [§] 101(a)(13).

DoD March 5, 2007 Memorandum at 2.

The Government argues that the April 30, 2011 First Amended Complaint has failed to state a claim for money damages under 5 U.S.C. §§ 5341-56, 5755, 8118, and the Fair Labor Standards Act, 29 U.S.C. §§ 201-19. First, 5 U.S.C. § 5755 authorizes the payment of a supervisory differential only if "(a) the employee is under the General Schedule, (b) has supervisory responsibility for one or more employees not under the General Schedule, and (c) if one or more of the subordinate employees would, in the absence of such a differential, be paid more than the supervisory employee." Gov't Mot. at 14 (citing 5 U.S.C. § 5755). The April 30, 2011 First Amended Complaint, however, fails to allege any of these statutory requirements. *Id.*

Second, 5 U.S.C. § 8118 allows the continuation of pay where an employee has "filed a claim for a period of wage loss due to a traumatic injury with his immediate superior on a form approved by the Secretary of Labor within the time specified in section 8122(a)(2) of this title." 5 U.S.C. § 8118. The April 30, 2011 First Amended Complaint, however, contains no allegations of a traumatic injury or of filing a claim for wage loss within the proper time. Gov't Mot. at 14. Third, the April 30, 2011 First Amended Complaint does not specify what portion of 5 U.S.C. §§ 5341-56 is being invoked, and contains no factual allegations to support any such claim. Gov't Mot. at 14. Fourth, the Government argues that Plaintiff cannot request overtime pay under the Fair Labor Standards Act, 29 U.S.C. §§ 201-19, because Plaintiff was exempt from the Act. Gov't Mot. at 15 (citing Gov't Appx. at 54). Plaintiff proffered no response. *See* Pl. Resp. at 1-3.

The court has determined that the April 30, 2011 First Amended Complaint contains no factual allegations to support a claim based on 5 U.S.C. §§ 5341-56, 5755, 8118, or the Fair Labor Standards Act, 29 U.S.C. §§ 201-19. Therefore, to the extent that the April 30, 2011 First Amended Complaint may be read to claim entitlement to compensation based on these sources of law, the court has determined that these claims must be dismissed for failure to state a claim, pursuant to RCFC 12(b)(6). *See Twombly*, 550 U.S. at 544. In addition, the April 30, 2011 First Amended Complaint contains no factual allegations to support the claims that the Government improperly withheld payments due to computer errors or in order to offset debts owed to the Government. Therefore, these claims are dismissed pursuant to RCFC 12(b)(6).

To the extent that the April 30, 2011 First Amended Complaint alleges that the Army denied Plaintiff full compensation as a result of an unlawful pay limitation, the April 30, 2011 First Amended Complaint has stated a claim upon which relief can be granted under RCFC 12(b)(6).

### IV. CONCLUSION.

For the reasons stated herein, the Government's May 17, 2011 Motion To Dismiss for lack of subject matter jurisdiction is granted with respect to Count I of the April 30, 2011 First Amended Complaint.

The Government's May 17, 2011 Motion To Dismiss for lack of subject matter jurisdiction is granted in part and denied in part with respect to Count II of the April 30, 2011 First Amended Complaint.

The Government's May 17, 2011 Motion To Dismiss for failure to state a claim is granted in part and denied in part with respect to Court II of the April 30, 2011 First Amended Complaint.

By leave of the court, and pursuant to RCFC 15(a)(2), Plaintiff is directed to file a Second Amended Complaint within 14 days of the issuance of the order to correct the deficiencies identified herein and clarify the nature of the claims alleged.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**